# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STERLING RICHMOND,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>EDWARD WALLS, JUDY SMITH, D. FOSTER, DR. SAUVEY, DR. MURPHY, and DR. GROSSMAN,<br><br>　　　　　　　　Defendants. | Case No. 18-CV-530-JPS<br><br><br>**ORDER** |

Plaintiff, who is incarcerated at Oshkosh Correctional Institution ("Oshkosh"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $30.20. 28 U.S.C. § 1915(b)(4).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as

frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-

pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's allegations concern allegedly inadequate medical care he received from prison medical personnel following leg surgery. Defendant Dr. Sauvey ("Sauvey"), a physician at Oshkosh, saw Plaintiff in early 2013 for a complaint of leg pain. (Docket #1 at 5). She diagnosed him with problems in his Achilles tendon and sent him to an outside specialist, Dr. Grossman ("Grossman"). *Id.* Grossman determined that Plaintiff needed surgery on the Achilles tendon, which he performed in March 2013. *Id.*

Plaintiff had difficulties healing after the surgery, including bleeding through his bandages, puss draining from his wound, odor emanating from the wound, and pain. *Id.* at 5–6. This occurred despite the fact that prison medical staff cleaned his wound and changed his bandages twice daily. *Id.* He complained of pain and possible infection to many medical personnel, including Sauvey. *Id.* at 6. He was given pain medication but the prison staff seemed to believe that the wound was healing properly. *Id.* As for Grossman, Plaintiff accuses him of not putting stitches in the wound originally, which he denied, and not doing enough to abate the growing infection. *Id.* at 7. Plaintiff further alleges that over time his pain

medications, antibiotics, and wound dressing schedule were changed or stopped by the physicians without sufficient reason and despite his ongoing complaints of pain and infection. *See id.*

After about a month, Plaintiff was shipped off to Dodge Correctional Institution ("Dodge") for more intensive medical care, as Dodge has a more robust medical facility. *Id.* at 8. During May 2013, Plaintiff received care from Dodge medical staff. *Id.* He complains about the quality of the care he received there, but he names none of the Dodge medical personnel as defendants in this case. *Id.* Plaintiff contends that his condition continued to worsen, with the wound turning from green to white to black, and he became bound to a wheelchair for a period of time. *Id.* at 8–9.

Plaintiff saw Grossman again in early June 2013. *Id.* at 9. Grossman advised that another surgery was required on the Achilles tendon. *Id.* He performed the second surgery on June 12, 2013. *Id.* Plaintiff complains that he was not seen by a doctor for over a week after the surgery, though he did receive bandage changes daily. *Id.* He was returned to Oshkosh, and at a follow-up appointment on June 25, he learned that he needed to see a dermatologist for wound care and a skin graft. *Id.* at 10. Plaintiff's pain medications were stopped from June 27 to July 6, which he says kept him in severe pain during that period. *Id.*

Plaintiff reports no problems in recovery during July and August 2013. *Id.* He received a skin graft in September 2013. *Id.* He was ordered to have daily bandage changes, but on some days this did not occur and Plaintiff believes that the Oshkosh Health Services Unit ("HSU") did not have the correct equipment for the job. *Id.* Plaintiff alleges he experienced pain and soreness in late September and October 2013. *Id.* at 11.

His recovery appeared to proceed normally for a year and a half, until in May 2015 Plaintiff noticed a bump around the surgical site that broke open and spilled blood and puss. *Id.* Plaintiff was seen in the HSU, the staff cleaned the wound, and Dr. Murphy ("Murphy") told him the new infection was not from the original wound. *Id.* Murphy prescribed antibiotics and took a sample of the wound for a culture. *Id.* At some point, an HSU nurse decided that Plaintiff was being given the wrong medication and changed Plaintiff's prescription. *Id.*

The new wound, according to Plaintiff, was painful and infected. *Id.* at 11–12. Plaintiff again started daily wound cleanings in the HSU. *Id.* However, Plaintiff reports that he was not given pain medication. *Id.* Eventually doctors learned that Plaintiff had an infection resulting from blood transfusions and the "hospital environment." *Id.* at 12. He was denied a medical restriction to a bottom bunk despite his complaints of pain. *Id.* In July 2015, Murphy opened the wound, drained it, and medicated and bandaged it. *Id.* at 13.

Nevertheless, Plaintiff claims that the pain, blood, and puss continued. *Id.* Nursing staff denied his requests to see Murphy. *Id.* He was eventually seen by the doctor again on August 5, 2015. *Id.* Plaintiff appears to disagree with Murphy's plan of care, which was to continue bandaging and observing the wound. *Id.* at 14. For the next few weeks, Plaintiff's continued requests to see the doctor because of ongoing pain were denied. *Id.*

Plaintiff saw Murphy again in late September 2015, and the doctor reported that Plaintiff would receive a third surgery from Dr. Grossman. *Id.* At the visit, Plaintiff says he complained of pain but was ignored. *Id.* After this visit, Plaintiff continued to complain of pain and drainage but

apparently nothing was done. *Id.* at 15. Plaintiff eventually saw Dr. Grossman for the third surgical procedure in late November 2015. *Id.* It seems Dr. Grossman opened the wound and cleaned it. *Id.* at 16–17. Plaintiff was given daily bandage cleanings and pain medications with apparently normal recovery. *Id.* When the pain medications were stopped, he complained and they were reordered. *Id.* at 17.

Some Dodge nurses—it seems Plaintiff was convalescing there—opined that the problems Plaintiff experienced resulted from the doctors not adequately treating the original infection. *Id.* The infection had gotten so severe that it was in Plaintiff's blood, and it returned to the wound site in December 2015. *Id.* However, Plaintiff's allegations drop off sharply here; he was prescribed additional antibiotics, received a protective boot for the leg in question, and apparently had a normal recovery thereafter. *See id.* at 18.

Though his factual allegations are lengthy, his complaint is simple: he charges Defendants with denying him needed care and medication and thereby causing him unnecessary and severe pain. Plaintiff's complaint crosses the very low threshold set at screening to state such a claim against Sauvey, Murphy, and Grossman. To demonstrate that these doctors were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of

deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). While the prison physicians' decisions in treating Plaintiff's infections or their denial of pain medication might ultimately be explained as the proper exercise of medical discretion, or at worst mere negligence, at the present stage the Court, generously construing Plaintiff's allegations, find that he states a claim against them. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *but see Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002) ("Mere dissatisfaction with a particular course of treatment, or even malpractice, does not amount to deliberate indifference.")

However, Plaintiff may not proceed on claims against the other Defendants—Edward Walls, the Secretary of the Wisconsin Department of Corrections, Judy Smith, the warden at Oshkosh, and D. Foster, the HSU manager at Oshkosh. In the complaint, he makes no mention whatsoever of these individuals except to say that they exercise supervisory authority over prison staff. (Docket #1 at 4). He also baldly alleges that "each individual knew of [his] serious condition and caused [him] pain and suffering" by failing to rectify the situation. *Id.* at 5. Yet nowhere does he allege when or how he placed these officials on notice of his condition or pain.

These officials cannot be liable for the actions of others simply because they may have acted in a supervisory capacity. Rather, they are responsible only for their own conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Since Plaintiff does not allege that any of these Defendants participated in his medical care or knew of Sauvey, Murphy, or Grossman's purported misconduct, no claim can be stated against them. *Id.* (to be liable, a supervisory defendant "must know about the conduct and

facilitate it, approve it, condone it, or turn a blind eye"). Thus, for the reasons stated above, Plaintiff shall be permitted to proceed on a claim of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against Defendants Sauvey, Murphy, and Grossman. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Edward Walls, Judy Smith, and D. Foster be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to

another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The Court further advises Plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge