# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STERLING RICHMOND,

                Plaintiff,

v.

DR. MARY SAUVEY, DR. PATRICK MURPHY, and DR. THOMAS GROSSMAN,

                Defendants.

Case No. 18-CV-530-JPS

**ORDER**

Plaintiff Sterling Richmond ("Richmond"), a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendants, three physicians, alleging that he received constitutionally inadequate medical care following leg surgery. (Docket #1). Two of the defendants, Dr. Mary Sauvey ("Sauvey") and Dr. Patrick Murphy ("Murphy"), work for the Wisconsin Department of Corrections directly, while the third defendant, Dr. Thomas Grossman ("Grossman"), works for a private hospital, Waupun Memorial, and regularly provides care to Wisconsin prisoners. On July 9, 2018, Sauvey and Murphy filed a motion for summary judgment as to all of Richmond's claims, arguing that he has failed to properly exhaust his prison administrative remedies. (Docket #23). Grossman filed a similar motion on July 23, 2018. (Docket #29). The motions are fully briefed and, for the reasons stated below, they will be granted.

1. **STANDARDS OF REVIEW**

    1.1    **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 1.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Several important policy goals animate the exhaustion requirement, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The Wisconsin Administrative Code provides that "[b]efore an inmate may commence a civil action or special proceedings, the inmate shall exhaust all administrative remedies the department has promulgated by rule." *Id.* § DOC 310.05. The are several steps an inmate must take to exhaust their administrative remedies under the ICRS. The contours of the system have changed over time, but the basic steps relevant to this case have always been in place. *See* (Docket #24 at 6–7). The ICRS process is explained to all Wisconsin inmates in the inmate handbook. *See* (Docket #38).

First, the inmate must file a grievance with the Inmate Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). The ICE may accept a late complaint "for good cause." *Id.* The ICE may accept or reject a complaint or can return the complaint to the inmate with instructions to first attempt to resolve the issue informally with prison staff. *Id.* § DOC 310.10. If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority. *Id.* § DOC 310.11.[1] For a rejected complaint, the reviewing authority's decision is final. *See id.* § DOC 310.10(10).

If the complaint is not rejected, the ICE issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* § DOC 310.11. The reviewing authority may accept or reject the recommendation. *Id.* An inmate dissatisfied with the reviewing

---

[1]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint," Wis. Admin. Code § DOC 310.03(15), which is usually the warden or his designee.

authority's decision on the merits of his complaint must appeal that decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* § DOC 310.09. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* § DOC 310.12. Upon receiving the Secretary's decision, or after ninety days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* § DOC 310.13.

2. **RELEVANT FACTS**[2]

   2.1 **Richmond's Leg Surgery and Subsequent Care**

At all times relevant, Richmond was principally housed at Oshkosh Correctional Institution ("Oshkosh"). Sauvey, a physician at Oshkosh, saw Richmond in early 2013 for a complaint of leg pain. She diagnosed him with problems in his Achilles tendon and sent him to Grossman, an outside specialist at Waupun Memorial Hospital. Grossman determined that Richmond needed surgery on the Achilles tendon, which he performed in March 2013.

Richmond had difficulties healing after the surgery, including bleeding through his bandages, puss draining from his wound, odor

---

[2]The facts are compiled from Richmond's complaint and the parties' evidentiary submissions in connection with the present motions. Richmond largely failed to dispute Defendants' proffered facts, as he submitted only two declarations—one from himself and one from his jailhouse lawyer—of marginal relevance to the present issues. (Docket #35, #36). His brief contains a response to Grossman's statement of facts (but not the other two defendants'), *see* (Docket #34), but the responses are mostly comprised of legal argument, unsupported by citation to evidence. Nevertheless, in view of his *pro se* status, the Court did not fault Richmond for the procedural infirmities in his submissions. Instead, the Court reviewed all the pertinent materials to uncover the undisputed and disputed facts. Richmond submitted a third declaration by a prisoner complaining of a poor surgery by Grossman, (Docket #35 at 2), but the Court has ignored it since it has nothing to do with exhaustion of administrative remedies.

emanating from the wound, and pain. This occurred despite the fact that prison medical staff cleaned his wound and changed his bandages twice daily. He complained of pain and possible infection to many medical personnel, including Sauvey. He was given pain medication but the prison staff seemed to believe that the wound was healing properly.

As for Grossman, Richmond accuses him of not putting stitches in the wound originally, an allegation he denied, and of not doing enough to abate the growing infection. Richmond further claims that over time his pain medications, antibiotics, and wound dressing schedule were changed or stopped by the physicians without sufficient reason and despite his ongoing complaints of pain and infection.

After about a month, Richmond was transferred to Dodge Correctional Institution ("Dodge") for more intensive medical care, as Dodge has a more robust medical facility than Oshkosh. During May 2013, Richmond received care from Dodge medical staff. He complains about the quality of the care he received there, but he names none of the Dodge medical personnel as defendants in this case. Richmond contends that his condition continued to worsen, with the wound turning from green to white to black, and he became wheelchair-bound for a period of time.

Richmond saw Grossman again in early June 2013. Grossman advised that another surgery was required on the Achilles tendon. He performed the second surgery on June 12, 2013. Richmond complains that he was not seen by a doctor for over a week after the surgery, though he did receive bandage changes daily. He was returned to Oshkosh, and at a follow-up appointment on June 25, he learned that he needed to see a dermatologist for wound care and a skin graft. Richmond's pain

medications were stopped from June 27 to July 6, which he says kept him in severe pain during that period.

Richmond alleges no problems in recovery during July and August 2013. He received a skin graft in September 2013. He was ordered to have daily bandage changes, but on some days this did not occur and Richmond believes that the Oshkosh Health Services Unit ("HSU") did not have the correct equipment for the job. He alleges he experienced pain and soreness in late September and October 2013.

His recovery appeared to proceed normally for a year and a half, until in May 2015 Richmond noticed a bump around the surgical site that broke open and spilled blood and puss. Richmond was seen in the HSU, the staff cleaned the wound, and Murphy, another Oshkosh physician, told him the new infection was not from the original wound. Murphy prescribed antibiotics and took a sample of the wound for a culture. At some point, an HSU nurse decided that Richmond was being given the wrong medication and changed his prescription.

The new wound, according to Richmond, was painful and infected. He again started daily wound cleanings in the HSU. However, Richmond reports that he was not given pain medication. Eventually doctors learned that he had an infection resulting from blood transfusions and the hospital environment. He was denied a medical restriction to a bottom bunk despite his complaints of pain. In July 2015, Murphy opened the wound, drained it, and medicated and bandaged it.

Nevertheless, Richmond claims that the pain, blood, and puss continued. Nursing staff denied his requests to see Murphy. He was eventually seen by the doctor again on August 5, 2015. Richmond appears to disagree with Murphy's plan of care, which was to continue bandaging

and observing the wound. For the next few weeks, Richmond's continued requests to see the doctor because of ongoing pain were denied.

Richmond saw Murphy again in late September 2015, and the doctor reported that Plaintiff would receive a third surgery from Grossman. At the visit, Richmond says he complained of pain but was ignored. After this visit, Richmond continued to complain of pain and drainage but apparently nothing was done. Richmond eventually saw Grossman for the third surgical procedure in late November 2015, in which Grossman opened the wound and cleaned it. Richmond was given daily bandage cleanings and pain medications with apparently normal recovery. When the pain medications were stopped, he complained and they were reordered.

Some Dodge nurses—it seems Richmond was convalescing there— opined that Richmond experienced pain because the doctors had not adequately treated the original infection. The infection had gotten so severe that it was in Richmond's blood, and it returned to the wound site in December 2015. However, Plaintiff's allegations drop off sharply at this point; he was prescribed additional antibiotics, received a protective boot for the leg in question, and apparently had a normal recovery thereafter.

### 2.2 Richmond's Inmate Complaints

Richmond filed eight complaints related to his leg surgery and the care he received afterward. Each was filed in October 2015. All were rejected because they were filed nearly two-and-a-half years after the events complained of and Richmond provided no reason why his late filings should be accepted. Additionally, Richmond did not offer evidence that he was denied the use of, or inhibited in any way from using, the ICRS on, around, or since the dates of the events. Further, it is notable that Richmond has successfully used the ICRS to complain of other issues throughout his

long tenure as a prisoner at Oshkosh and other Wisconsin institutions, including in March 2013, the month of his first surgery.

Richmond's October 2015 complaints will be discussed in turn below to the extent they are relevant here.

### 2.2.1 Complaint Against Sauvey

Richmond filed one ICRS complaint, denominated OSCI-2015-19092, related to the care he received from Sauvey. (Docket #26-4). He filed that complaint on October 12, 2015. *Id.* at 8. It lists the "date of incident" complained of as March 21, 2013 to April 25, 2013. *Id.* March 21, 2013 was the date of Richmond's first surgery, and April 25, 2013 was the date Richmond was first sent to Dodge for recovery.

In the complaint, Richmond alleged that Sauvey exhibited deliberate indifference to his medical needs by failing to provide adequate care, which caused him unnecessary pain and suffering. *Id.* Specifically, Richmond contended that "Dr. Sauvey knew I had serious leg surgery at which she on number of occasions failed to treat properly and delayed in treating ranging from the 3-21-13 to 4-25-13." *Id.* He further stated that "[t]his complaint is for a number of reasons in which occurred at/over [an] extended time." *Id.*

The ICE rejected the complaint as untimely on October 12, 2015. *Id.* at 6. The ICE reasoned:

> Inmate Richmond provides no good cause for the ICE to extend the time lines, nor does he offer evidence or proof that would show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence. A review of institution records indicate he has been working at Badger State Industries for the past several years, before and after the surgery, attending canteen and has no medical restrictions listed in [WICS, the database of inmate records]. The complaint is rejected as it fails to adhere to the stated filing requirement.

*Id.*

Richmond appealed the rejection to the reviewing authority. *Id.* at 9. He said that his late complaint should be accepted because "good cause is a medical issue for reason of federal safety rule, it's also federal rule that [an] inmate exhaust their remedy. Everyone that I've filed on had known of my pain [and] suffering and infection and responded inadequate[ly]." *Id.* The reviewing authority affirmed the rejection of the complaint as untimely. *Id.* at 5.

### 2.2.2 Complaint Against Grossman

Another of Richmond's October 2015 ICRS complaints, denominated OSCI-2015-18929, concerned the care he received from Grossman. (Docket #26-3 at 9). This complaint lists the "date of incident" as March 21, 2013, the date of his original surgery. *Id.* In the complaint, Richmond alleges that Grossman displayed deliberate indifference to his medical needs by failing to provide adequate treatment and medicines, which caused him unnecessary pain and suffering. *Id.* In particular, he complains that when Grossman performed his initial leg surgery, he "left the wound open and I received an infection immediately after. Due to this surgery I was caused to suffer unnecessary pain." *Id.*

Richmond filed this complaint on October 2, 2015. *Id.* at 6. Upon receipt, the ICE sent Richmond a letter asking him to "clarify the date of incident and [asking] if he had recent medical appointments related to the surgery." *Id.* However, Richmond did not provide this information. The ICE reported that "[t]he complaint was resubmitted on 10/9/15 with no further information or clarification." *Id.* The ICE rejected the complaint as untimely on October 12, 2015, for the same reasons the Sauvey complaint

was rejected, including that Richmond demonstrated no good cause for his late filing and the available evidence suggested that he was not in any way unable to utilize the ICRS during the relevant period. *Id.* at 6.

Richmond appealed this rejection to the reviewing authority. *Id.* at 10. As with the Sauvey complaint, he said that his late complaint should be accepted because "good cause is a medical issue for reason of federal safety rule. It's also federal rule that inmate exhaust their remedy. Everyone that I've filed on had known of my pain and suffering and infection and responded inadequately." *Id.* The reviewing authority affirmed the rejection of the complaint as untimely. *Id.* at 5.

### 2.2.3 Other Complaints from October 2015

The remainder of Richmond's October 2015 complaints address grievances against healthcare providers who are not defendants in this action. Notably, Richmond did not file any ICRS complaints regarding treatment he received from Murphy.

## 3. ANALYSIS

The undisputed facts demonstrate that Richmond has not exhausted his administrative remedies with respect to his claims in this case. Richmond filed no ICRS complaints at all with respect to Murphy, so his claim against that doctor fails easily. As for Sauvey and Grossman, Richmond did file inmate complaints, but they were years late under the ICRS rules. He did not argue to the ICE that good cause supported his late filings, nor did he explain how or why he was unable to utilize the ICRS at the time of the incidents in question. The reviewing authority was not persuaded that the mere existence of medical issues excused his tardiness.

As a result, the Sauvey and Grossman complaints were rejected. A rejected inmate complaint does not achieve exhaustion, as it means that the

prisoner failed to follow all steps in the grievance process. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *Edmonson v. McCaughtry*, 157 F. App'x 908, 910 (7th Cir. 2005). Thus, the record indicates that Richmond failed to exhaust his prison administrative remedies as to his present claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]").[3]

Richmond does not contest these basic facts. He does, however, offer a host of arguments why his failure to exhaust should be excused. None are persuasive. First, as he did in his appeals to the reviewing authority, Richmond here argues, "what better cause is there than a medical issue when I could have lost a leg[?]" (Docket #34 at 1–2). He did not argue this to the ICE or provide evidence showing why his medical problems prevented his timely filing an inmate complaint. The severity of his leg injury does not speak to his ability to file ICRS complaints. This Court cannot gainsay the reviewing authority's reasonable decision to reject this argument based on state procedural rules. *See Lindell v. O'Donnell*, No. 05-C-04-C, 2005 WL 2740999, at *17 (W.D. Wis. Oct. 21, 2005) ("This court cannot re-examine [procedural] defaults and second-guess the application

---

[3]The parties agree that although Grossman is not an employee of the Wisconsin Department of Corrections, claims against him must nevertheless be exhausted through the ICRS because he acted as an agent of the institution for the provision of medical care to inmates. (Docket #30 at 9–12); (Docket #34 at 6); (Docket #37 at 3); Wis. Adm. Code § DOC 310.03(8); *Hallock v. Ill. Dep't of Corr.*, No. 10–cv–0060–DRH, 2010 WL 2574163, at *2 (S.D. Ill. June 23, 2010) ("Because Plaintiff's complaint seeks relief against prison officials (and a private contractor providing medical services to prisoners) and because the suit involves prison conditions, the instant complaint should be dismissed for failing to exhaust administrative remedies.").

of state procedures by state agencies and courts. For that reason, when the record of an inmate's use of the prison complaint system arrives in federal court, it is what it is."); *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (dismissal of prisoner grievance for procedural reasons gives rise to procedural default, which "blocks later attempts to litigate the merits").

Second, Richmond complains that relief in this case is warranted notwithstanding his failure to exhaust in order to avoid irreparable harm to him. (Docket #34 at 2, 7). Yet in the same breath, he acknowledges that the PLRA does not have an irreparable-harm exception to exhaustion. *Id.* at 2. Richmond urges that the Court can exercise equitable discretion to overlook exhaustion problems, which are not jurisdictional, *Perez*, 182 F.3d at 535, but his case is a poor candidate for the Court's equitable magnanimity, to the extent it is available. In reality, he is not complaining about some imminent or ongoing harm; instead, he wants damages for a long course of pain that originated with his March 2013 leg surgery. This is an ordinary damages action for past harms, not a case crying out for immediate equitable relief.

Third, Richmond contends that the ICE and reviewing authority were biased against him because they lack medical training and are predisposed to side with prison officials when prisoners complain. (Docket #34 at 2). This uncorroborated, unsworn assertion is not colorably supported by the record. More importantly, it does not explain Richmond's own failure to timely file his inmate complaints. No suggestion of bias appears from the ICE's determination that Richmond's complaints were years late, nor does Richmond dispute his failure to offer evidence or argument to the ICE that good cause excused his late filings. In short, it was not the prison administrators' fault that Richmond's complaints were tardy. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (exhaustion procedures

can be deemed "unavailable," thereby excusing the exhaustion requirement, when the process is frustrated by prison administrators, whether through failing to respond to a complaint or by preventing an inmate access to the grievance system).

Fourth, Richmond argues that as a non-lawyer he should be excused from the exhaustion requirement since he did not understand it. (Docket #34 at 2–4); (Docket #35 at 1). This is not an acceptable reason for failure to exhaust. The ICRS rules are clear, particularly the 14-day time limit and the need to show good cause for any late complaints, they are available to inmates in the inmate handbook, (Docket #38-1), and no legal training is needed to decipher them. The fact that his jailhouse lawyer may have given him faulty advice about when and how to exhaust, *see* (Docket #35 at 5–6), is no excuse. Moreover, his inmate complaint history indicates that he successfully filed several grievances throughout his time as a state prisoner, both before and after his March 2013 surgery. *See* (Docket #26-1). Sterling Richmond knows how to use the ICRS.

Fifth, Richmond believes that he complied with the exhaustion requirement simply by putting his allegations before the ICE and giving him an opportunity to address them substantively. (Docket #34 at 3–4). This is incorrect; he was required to fulfill all the steps of the ICRS to complete the exhaustion process. *Pozo*, 286 F.3d at 1025 ("Prisoner[s] must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Only if the ICE had overlooked the timeliness issue and proceeded to the merits would this argument hold water. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Sixth, Richmond contends that he was unaware that he needed to complain of medical issues within fourteen days. Even if this is true as a

subjective matter, it does not make a difference, as the ICRS procedures, inmate handbook, and inmate complaint form explain that medical issues are exempt only from the two-complaints-per-week rule, not the 14-day deadline. *See* (Docket #37 at 2–3). What's more, in *Porter v. Nussle*, 534 U.S. 516, 520 (2002), heavily cited by Richmond, the Supreme Court held that all complaints about prison life—whether arising from general conditions or specific instances of mistreatment of one prisoner—are subject to the exhaustion requirement. Richmond's medical claims are not subject to special rules.

Seventh, again citing his status as a lay person, Richmond suggests that he "was not sure who [he] would need to sue in this matter at first," (Docket #34 at 3, 5), an argument that evokes the discovery rule applicable to most constitutional claims. Generally, Section 1983 claims do not accrue until the plaintiff knows or has reason to know that he was injured and the likely cause of the injury. *See Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002); *United States v. Kubrick*, 444 U.S. 111, 121–22 (1979). Assuming this rule applies to administrative exhaustion, the argument nevertheless fails, as Richmond's federal complaint and his inmate complaints reveal that he knew the nature of his injuries—inadequate care, pain medication, and surgery followed "immediately" by infection—and their sources—Sauvey and Grossman—in time to file timely grievances. (Docket #26-3, #26-4).

At a minimum, Richmond knew of the problems arising from his surgery, as well as Sauvey and Grossman's involvement, long before October 2015. Why did he not complain at some time during 2013 once it became clear that the healing process had gone off the rails? He does not

say. Perhaps the ICE would have been more amenable to receiving a complaint that was only a few weeks or months late, rather than years.

Finally, Richmond's jailhouse lawyer, Keith Jackson ("Jackson"), who submitted a declaration in connection with the present motions, argues that Richmond's October 2015 complaint about Grossman was directed at his ongoing bouts of pain, not just the March 2013 surgery. (Docket #36 at 1). Jackson may well be correct that if Richmond had complained of pain he was experiencing in October 2015, his complaint would not be untimely. *See id.* But Richmond failed at every turn to explain this to the ICE, and he cannot rewrite his complaint history now.

First, Richmond neglected to respond to the ICE's letter asking for clarification regarding the date of the incident and asking if he had recent medical appointments related to the surgery. This would have been the opportune time to mention that his complaints were about ongoing pain although the initial incident occurred in March 2013. Not only did he ignore the letter, he refiled the complaint a few days later without mentioning continuing pain or medical problems. Instead, his October 9, 2015 complaint clearly identified the date of the incident as March 21, 2013 and alleged that Richmond's complaint arose from the surgery and the infection that occurred immediately thereafter. Then, when he appealed the rejection to the reviewing authority, Richmond again failed to state that his medical issues had persisted from the date of the surgery to the present. Thus, he fumbled several reasonable opportunities to show prison officials that his complaint about Grossman should be considered timely on the theory that his pain and injuries were ongoing. The Court will not overturn the ICE's timeliness assessment based on Richmond's *post hoc* rationalizations. *Lindell*, 2005 WL 2740999, at *18.

For the same reasons, Jackson's argument has no application to the Sauvey complaint. (He does not direct this argument toward Sauvey, but the Court addresses it all the same.) As with his Grossman complaint, here Richmond expressly identified the period of March 21 to April 25, 2013 as the time span of his complaint against Sauvey. If he wanted the complaint to cover a broader timeframe, it would have been only too easy to change this designation or explain his theory to the ICE or the reviewing authority. Again, Richmond cannot revise his inmate complaint after-the-fact, in the context of the present litigation. *Id.*; *Pozo*, 286 F.3d at 1025 ("If the state stands on its time limits and rejects a filing as too late, then state remedies have not been properly invoked."). Thus, the Court is obliged to conclude that Richmond has not exhausted his administrative remedies with respect to his claims in this case.

## 4. CONCLUSION

The undisputed facts reveal that Richmond failed to properly exhaust his administrative remedies with respect to his claims prior to instituting this lawsuit. His claims must, therefore, be dismissed without prejudice.[4]

Accordingly,

**IT IS ORDERED** that Defendants' motions for summary judgment (Docket #23, #29) be and the same are hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[4] Although it is unlikely that Plaintiff will be able to complete the ICRS process for his claims, dismissals for failure to exhaust are always without prejudice. *Ford*, 362 F.3d at 401.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge